LINDSAY, PLAINTIFF-APPELLANT, *v.* CINCINNATI (CITY) ET, DEFENDANT-APPELLEE.

Ohio Appeals, First District, Hamilton County.

No. 8721.   Decided May 9, 1960.

*Mr. G. Cornelius White,* for plaintiff-appellant.
*Mr. James W. Farrell, Jr.,* city solicitor, and *Mr. Phillip S. Olinger,* assistant city solicitor.

O'CONNELL, J.   This case involves a criminal action of the City of Cincinnati against Marshall Harper, who was charged with and convicted of violating Section 407-134 of the Code of Ordinances of the City of Cincinnati.   This section provides for the arrest of anyone who uses an automobile for the purposes of a taxicab and the confiscation of the automobile.   It likewise is related to case 726203 (Municipal Court of Cincinnati) *The Central Trust Co.* v. *Jeffery C. Lindsay* and the *City of Cincinnati* (a replevin action) and to case 727231 (Municipal Court of Cincinnati) *Jeffery Lindsay* v. *The City of Cincinnati* and *The Central Trust Co.* (a replevin action).

Case No. 726263 was dismissed.   No appeal was taken, and it therefore has no part in this Court of Appeals case.

It is in case No. 727231 that an appeal has been perfected by Jeffery C. Lindsay from the decision of the Municipal Court of Cincinnati, dismissing the replevin action against the City of Cincinnati on the grounds that the automobile in the criminal case of the City of Cincinnati against Harper was being used unlawfully and in violation of Section 407-134 of the Code of Ordinances of the City of Cincinnati and was therefore subject to confiscation. (The defendant The Central Trust Company was likewise dismissed for the reason that "Lindsay's petition states no conceivable cause of action against Central Trust and judgment is for Central Trust on this petition.")

Section 407-134 of the Code of Ordinances is as follows:

"Seizure and sale of Vehicles Violating Public Vehicle Code. When any police officer of the city shall discover any vehicle operating in violation of Section 407.3, 407-97, 407.99 or 407,101, he shall take possession of the vehicle and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested, in any court having jurisdiction, but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, secured either by sufficient sureties, or by deposit of cash or bonds of the United States, State of Ohio, or any solvent political subdivision thereof in a sum equal to the value of said property, which said bond shall be approved by the Clerk of the Court as to form and sufficiency of sureties or collateral, and shall be conditioned to return said property to the custody of the division of police on the day of trial, to abide by the judgment of the court. The Court, upon conviction of the person so arrested shall forfeit said bond in the event that said vehicle has not been returned to the custody of the division of police, or if said vehicle be in the custody of the division of police, shall order a sale by public auction thereof, and the officer making the sale after deducting the expenses of keeping the property, the cost of court proceedings, and the cost of the sale, shall pay all liens according to their priorities, which are established by intervention or otherwise, at said hearing, or in any other proceeding brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the vehicle was being used in violation of the public vehicles code. The balance of the proceeds realized from such sale, remaining after the payment

of the aforesaid expenses, costs and liens, shall be paid into the Treasury of the city to the credit of the general fund. All liens proved against property sold under the provisions of this section, shall be transferred from the property to the proceeds of the sale of the property."

Now Jeffery C. Lindsay in his petition alleges that "he did at no time authorize, consent, or have any knowledge whatsoever that his automobile was going to be used as a bootleg cab or for any other illegal purpose; that he did request Marshall Harper to drive his car to the repair shop and any deviation from this course was a frolic of his own."

The question for this Court to decide is whether the demurrer to the petition which was sustained by the trial court was properly sustained or not. In the memorandum in support of its demurrer the defendant, the City of Cincinnati, states that "the logical question seems to be whether or not the ordinance must make a provision for the owner to recover his automobile if he is not the person arrested."

The trial court found that the ordinance was not unconstitutional largely on the authority of *Goldsmith-Grant Co.* v. *U. S.*, 254 U. S., 505. The court therefore held in effect that the seizure and sale of the automobile in question belonging to Jeffery C. Lindsay (M. 53 Chevrolet 4 door Sedan, Serial No. B53N028214) was not in violation of the due process of law provisions of Ohio and the United States.

There is no doubt that it appears that the ordinance in question should make some provision for relief in the case of an innocent owner of property confiscated under the ordinance. It would seem that this ordinance violates the due process clauses of both the United States Constitution and the Constitution of the State of Ohio. Suppose that the property involved had been stolen and then used in violation of the ordinance. Would there still remain no relief for the innocent owner? Or shall we be impressed with the fiction at page 510 in the *Goldsmith-Grant case*, 254 U. S., 505, wherein the court ascribes to the property a certain personality, a power of complicity and guilt in the wrong"? Even in this case the Court reserved its "opinion as to whether the Section (U. S. Code) can be extended to property stolen from the owner or otherwise taken from him without his privity or consent."

Now in the instant case, it might easily be argued that when the defendant Harper used the automobile as a taxicab it was for that purpose being "taken without his (Lindsay's) privity or consent."

Now if it may be that the Section of the United States Code might give relief in the case of a stolen automobile or one obtained without the consent of the owner, then there should not be such a large hiatus between those situations and one involving the bailment in the instant case. It would therefore seem logical that relief should be given whenever the rights of an innocent owner would otherwise be ignored, unless, of course, the said owner was guilty of negligence that amounted to complicity.

Quite different from the holding in this case was that of *Grieb et al*, v. *Dept. of Liquor Control of the State of Ohio, et al.*, 153 Ohio St., 77. Now the trial court in his opinion said that "Grieb and Goldsmith-Grant are distinguishable on their facts. In the *Grieb case* the liquor seized was lawfully possessed and had not been used illegally; in Goldsmith-Grant the Hudson automobile was used illegally as was the Chevrolet in these instant cases." In effect the trial court was saying that the liquor had "no guilt in the wrong," but that the automobile did have such "guilt." If this technical and unreal distinction exists, there are many ways in which the two cases are alike. Certainly, there are many resemblances between the *Grieb case* and the case before this Court. In the former, liquor was confiscated under Section 6064-40, General Code; the said liquor having been legally acquired and not declared a public nuisance *therein* for the use of public institutions without compensation. In the case before the Court, the automobile had been legally acquired and made subject to a sale with the assets, remaining after the payment of court costs and liens, being payable to the general fund of the City Treasurer. The Common Pleas Court found in the *Grieb case* that Section 6064-40, General Code (providing for the confiscation of private property and which is not declared a public nuisance therein, without compensation to the owner, and with no provision for hearing or judicial process or judicial determination) was unconstitutional "in that it authorizes the taking and confiscation of private property without due process of law and without compensation, in viola-

tion of Sections 16 and 19 of Art. I of the Constitution of the State of Ohio and the Fourteenth Amendment of the Constitution of the United States." (Section 6064-40, General Code, was repealed in 108 V Pt. 2, 1184 Ohio Laws.) Certainly, therefore, the confiscation of the Chevrolet automobile in the case at bar is equally unconstitutional, inasmuch as there is a similar confiscation without compensation, and with no opportunity for a hearing. Again, suppose the automobile had been stolen, or had been forcibly taken from the owner, would the writ of replevin then apply? Remember that even in the *Goldsmith-Grant case*, the court asserted that it was not including in its ruling what the decision might have been if the automobile had been stolen or taken from him (the owner) "without his privity or consent." To repeat, it is our opinon that once the automobile in question was being used illegally or for any purpose other than to "drive his (the owner's) car to the repair shop," it was being taken from the owner "without his privity or consent."

The Common Pleas Court (*Grieb case*) also declared that the owner was "entitled to have said liquor restored to him by defendants. So, in the instant case, the owner should be entitled to have the automobile restored to him after a hearing. The decision of the Common Pleas Court was ultimately affirmed by the Supreme Court. In its opinion the Supreme Court, at page 81, pointed out the difference "between that class of articles which have been declared unlawful and a public nuisance by statute and may be seized and disposed of forthwith and the class of property which is lawful in its ordinary and proper use and becomes contraband only when used in an unlawful manner and where there is a determination to that effect in a court of competent jurisdiction." Certainly, this distincton applies to an automobile as well as to liquor.

That the failure of the City Ordinance involved in this case to give the owner an opportunity to be heard is plainly contrary to the provisions of the Ohio Constitution is apparent from the decision in *State, ex rel. Hoel, Prosecuting Attorney* v. *Brown*, 105 Ohio St., 479. In this case a quo warranto proceeding was instituted against Dan H. Brown, Darke County Treasurer, by John M. Hoel, the Prosecuting Attorney for Darke County, on Brown's refusal to give up the office. The County Commis-

sioners had attempted to remove him from office and to appoint his successor after the report of the State Bureau of Inspection (charging embezzlement of public funds) had been received and relied upon by the County Commissioners. However, the Court of Appeals found that a motion for a judgment on the pleadings was well taken because "it nowhere appears in the pleadings of the said plaintiff either in his petition or in his reply that the said defendant Dan H. Brown was ever notified of the report and charges made against him and for consideration by the Board of County Commissioners of Darke County and it nowhere appears in said pleadings that a hearing was ever granted the said Dan H. Brown, or a hearing ever had on said report and charges in which the said defendant Dan H. Brown was given an opportunity to be heard and it does appear affirmatively in the said amended answer of the defendant that notice of said charges and a hearing thereon was never granted him the said defendant." It was from this decision of the Court of Appeals that error was prosecuted to the Supreme Court. The Supreme Court affirmed the decision of the Court of Appeals, largely on the basis that a public officer can be removed from office only after he has had an opportunity to be heard. And so, syllabus 2 of this case is as follows: "By this section (Section 38, Article II of Ohio Constitution) they plainly provided that such removal should be made only 'upon complaint and hearing.'" And in its opinion the Court quotes from Daniel Webster in the *Dartmouth College case* as follows: "By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial." Now, in order to render this judgment it was necessary to find that Section 2713, General Code (providing for the removal from office without complaint or hearing) was inconsistent with Section 32 of Article II of the Ohio Constitution as amended in 1912 and therefore unconstitutional. Such finding the court did make.

Thus the basic law of Ohio is zealous to protect property rights, and if this decision holds, as it does, that there can be no such protection without a hearing first, then certainly the City Ordinance involved in the *Lindsay case* which provides for no such hearing violates the spirit and the implications of the Ohio Constitution and the express provisions of Article I, Sections

1, 16, and 19 (Bill of Rights) of the said Constitution. Of course it follows that the said ordinance is equally violative of the 14th Amendment to the United States Constitution, in that there is a taking of property without due process of law.

Similarily, in *Edson et al,* v. *Crangle*, 62 Ohio St., 49, wherein "L. K. Burton, Chief Game & Fish Officer (of Ohio) hired E. R. Edson, owner of the tug Harrow and proceeded with the tug —to where the (fish) nets were located (on Lake Erie) and seized and carried away the nets" for the reason that they were allegedly being "used at the time in violation of Section 6968, Revised Statutes, the court held that the said section was unconstitutional and added that (on page 66) "proper legal proceedings are always necessary to adjudge a forfeiture or confiscation, and to permit officers or private persons to seize, sell or appropriate private property *without legal proceedings*— would be inconsistent with the principles of constitutonal government, and would soon lead to fraud, corruption, oppression and extortion." (Emphasis ours.) In other words, property cannot be taken without due process of law—where there is no hearing, there can be no due process.

Though the latter cases may differ in some respects from the *Lindsay case*, they all have in common the inviolability of property rights so necessary to human existence.

Finally, there is the case of *McKown* v. *City of Atlanta et al.,* 284 Ga., 221, where in (syllabus 2) it is said that: "The Municipal authorities had no right, under such revocation (of a permit to sell malt beverages) to destroy the plaintiff's property in domestic wines the sale of which he was lawfully conducting, in his stock of beer on hand, and in his signs advertising his business." Again, there is the insistence on the inviolability of property rights.

It is thus the opinion of this Court that Ordinance 407-134 of the Code of Ordinances of the City of Cincinnati is unconstitutional, invalid and void, for the reason that it provides for the taking of property without due process of law (inequitable unfairly). The judgment of the trial court is therefore reversed, and judgment is entered in this Court for plaintiff.

LONG, J., concurs.

MATTHEWS, P. J., concurs in conclusion.